**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Concrete Management Corporation, a Colorado Corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Double AA Builders of California, Inc., a California corporation; Double AA Builders, Ltd., an Arizona corporation, Jointly and Severally,<br><br>　　　　Defendants.<br>_____<br>Double AA Builders of California, Inc., a California corporation.<br><br>　　　　Counterclaimant,<br><br>vs.<br><br>Concrete Management Corporation, a Colorado Corporation.<br><br>　　　　Counterdefendant.<br>_____ | No. CV-08-0322-PHX-LOA<br><br>**ORDER** |

Defendants Double AA Builders of California, Inc. and Double AA Builders, LTD. (collectively, "Defendants" or "Double AA") move for summary judgment on Plaintiff Concrete Management Corporation's ("Plaintiff" or "CMC") affirmative claims (breach of contract, accounts stated-open account, *quantum meruit*/unjust enrichment, and violation of Arizona's Prompt Pay Act) alleged in CMC's Amended Complaint. (docket # 29) Double

1 AA contends "CMC did not hold a proper and valid California contractor's license when it
2 entered into the contract upon which its claims are based []" and because "California law
3 applies to this issue[,]" Double AA is entitled to judgment as a matter of law on all CMC's
4 claims. *Id.* at 2, 5. CMC argues, however, Arizona's choice-of-law provisions dictate that
5 Arizona, not California, law applies to whether CMC was required to possess a valid
6 California contractor's license as a condition precedent to payment on the subject
7 construction contract.

8 After considering the parties' briefings and the relevant case law, the Court
9 concludes Arizona law applies and Double AA is not entitled to judgment as a matter of law
10 on CMC's claims. The Court denies Double AA's Motion. Because oral argument would
11 not aid the Court's decisional process, the Court denies Double AA's request for oral
12 argument. *Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir.1999)
13 (explaining that if the parties provided the district court with complete memoranda of the law
14 and evidence in support of their positions, ordinarily oral argument would not be required).

## BACKGROUND

16 On or about May 28, 2004, Double AA, an Arizona general contractor,
17 subcontracted with CMC, a Colorado concrete subcontractor, to perform certain concrete
18 work at a construction site in Poway, California known as the Home Depot #8949 project
19 ("the Project"). (docket # 12 at 2; Case Management Report) The parties entered into their
20 written subcontract agreement ("Subcontract ") in Scottsdale, Arizona. (*Id.*)  Double AA
21 agreed to pay CMC the quoted amounts, as billed, which equaled the total sum of
22 $1,215,989.00. CMC claims $107,791.06 remains unpaid. (*Id.*)

23 CMC contends it performed each and every term, condition, stipulation and
24 agreement expressly or impliedly agreed to be performed on its part at the time and in the
25 manner stated in the Subcontract. (*Id.*) Beginning September 24, 2004, and at various times
26 through October 10, 2005 and thereafter, CMC demanded, but has not received, payment of
27 the balance due on the Subcontract. (*Id.* at 3) CMC seeks damages in the sum $107,791.06,
28 pre-judgment and post-judgment interest, and "all costs of collection including reasonable

1 attorney's fees." (docket # 1 at 3, 5)

2 Double AA disputes CMC is owed any additional money on the Project.
3 Double AA asserts that under the terms and conditions of the parties' agreement, time was
4 of the essence and CMC failed to perform its work in accordance with the Project schedule.
5 (docket # 12 at 3; Case Management Report) Double AA alleges CMC's failure to supply
6 labor and materials/equipment impacted Double AA's ability to timely perform other
7 subsequent work on the Project. In addition, Double AA contends there were issues with
8 the quality of CMC's work. (*Id*. at 4) For example, Double AA claims a major problem
9 related to CMC's poor workmanship was the failure of the concrete to meet the required 1%
10 minimum slope as required by the construction documents. (*Id*.) As a result of this defective
11 work, Double AA asserts water flowed into the building. Double AA alleges it was forced
12 to retain another concrete subcontractor to perform remedial work on the Project. (*Id*.)

13 As a result of CMC's alleged failure to perform its subcontract work in a good
14 and workmanlike manner, Double AA claims it incurred additional costs to complete CMC's
15 work; to investigate and correct defects in CMC's work; and to pay CMC's suppliers
16 directly. (*Id*.) Double AA also claims damages because of CMC's failure to perform its
17 work in a timely manner and in accordance with the Project's schedule. By its Counterclaim,
18 Double AA seeks an award of damages against CMC in an amount "not less than
19 $122,733.00, together with interest [and] its reasonable attorneys' fees pursuant to the terms
20 of the Subcontract and A.R.S. § 12-341.01(A)." (docket # 26 at 6-7)

21 It is undisputed that the parties' Subcontract contains a choice-of-law
22 provision, requiring the application of Arizona law to the parties' agreement. Paragraph 32
23 of the Subcontract states:

> 32. <u>INTERPRETATION AND SAVINGS CLAUSE</u>. *This Subcontract shall be interpreted in accordance with the laws of the State of Arizona, with the exception of the choice of laws provisions thereof.* If any provisions hereof or the application thereof to any person or circumstance is invalid, the invalidity shall not affect any other provision or application of this Subcontract which can be given affect without the invalid provision or application and to this end, the provisions of this Subcontract are severable. (emphasis added)

28 (Defendants' Statement of Facts ("DSOF"), ¶ 5, Exhibit ("Exh.") 2, docket # 30 at 3;

- 3 -

1 Plaintiff's ("PSOF"), ¶ 1, Exh. 1, docket # 31-3 at 1-2)

2 Notwithstanding the Subcontract's choice-of-law provision, Double AA
3 contends California law applies because "the law chosen by the parties would violate a
4 fundamental policy of another state [California] that has a greater interest than the chosen
5 state [Arizona] in the determination of the particular issue[,]" citing *Swanson v. The Image*
6 *Bank, Inc.*, 206 Ariz. 264, 268, 77 P.3d 439, 443 (Ariz. 2003) and Restatement (Second) of
7 Conflict of Laws § 187(2)(b) (1971). (docket # 29 at 4)  CMC disagrees and asserts Arizona
8 law controls because Double AA's argument improperly " 'collapse[s]' the proper Arizona
9 choice-of-law analysis by intentionally avoiding the first required element of [the
10 Restatement § 187] analysis." (docket # 31 at 2-3)  The Court agrees with CMC that the
11 parties' choice-of-law provision is valid and effective under Restatement § 187(1) and
12 Arizona's interpretation thereof. Therefore, the Court concludes Arizona law applies to the
13 parties' Subcontract and this action.

14 **JURISDICTION AND VENUE**

15 CMC resides in Colorado at 5490 West 13th Avenue, Denver, Colorado
16 80214, where it is incorporated and maintains its principal place of business. (docket # 12
17 at 4-5) Defendant/Counterclaimant Double AA Builders of California, Inc. resides in both
18 California and Arizona because it is incorporated in California but its principal office is
19 located at 6040 East Thomas Road, in Scottsdale, Arizona. (*Id*. at 5)  Double AA Builders,
20 Ltd., resides in Arizona because it is incorporated in Arizona and has its principal place of
21 business also at 6040 East Thomas Road, in Scottsdale.  Each party is a citizen of a different
22 state.

23 The District Court of Arizona has subject-matter jurisdiction over this case
24 pursuant to 28 U.S.C. § 1332(a)(1) and (c). *Industrial Tectonics Inc. v. Aero Alloy*, 912 F.2d
25 1090, 1092 (9th Cir. 1990) ("For the purposes of diversity jurisdiction, a corporation is a
26 citizen of any state where it is incorporated and of the state where it has its principal place
27 of business."). There is complete diversity between the parties and the amount in controversy
28 is over $75,000.00.  Additionally, this Magistrate Judge has jurisdiction to preside over this

1 action due to the express written consent of all parties pursuant to 28 U.S.C. § 636(c) and
2 Rule 73, Fed.R.Civ.P., with the approval of the initially-assigned District Judge. (docket
3 #14)
4         Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(a) because
5 Defendants Double AA reside, and have their principal offices for transacting business
6 located at the same office, in the State of Arizona. Double AA admits venue is proper.
7 (docket # 24 at 2, ¶ 4)

## SUMMARY JUDGMENT STANDARDS

9         Under Federal Rule of Civil Procedure 56(c), summary judgment is
10 appropriate if the pleadings and affidavits show that there is no genuine issue as to any
11 material fact and that the moving party is entitled to a judgment as a matter of law.
12 Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The opposing party
13 may not rest upon mere allegations or denials in the pleadings but must set forth specific
14 facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
15 242, 248-49 (1986). Summary judgment will be granted against the party who fails to make
16 a showing sufficient to establish the existence of an element essential to that party's case and
17 on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.
18         All reasonable inferences must be drawn in the non-moving party's favor, but
19 such "inferences are limited to those upon which a reasonable jury might return a verdict."
20 *U.S. ex. rel. Anderson v. Northern Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (citing
21 *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir.
22 1987)
23 ///

## CHOICE OF LAW

25 **A. Federal or State Law**
26         In a breach-of-contract diversity action, a district court applies the Federal
27 Rules of Evidence. *Trammel v. United States*, 445 U.S. 40, 47 n. 8; *Wray v. Gregory*, 61
28 F.3d 1414, 1417 (9th Cir. 1995) (*per curiam*) ("the Federal Rules of Evidence ordinarily

govern in diversity cases"). Nevertheless, "[a] district court in diversity jurisdiction must apply the law of the forum state to determine the choice of law." *Orr v. Bank of America*, 285 F.3d 764, 772 n. 4 (9th Cir. 2002) (citing *Cleary v. News Corp*., 30 F.3d 1255, 1265 (9th Cir. 1994). The parties agree Arizona's choice-of-law provisions dictate the validity and applicability of the Subcontract's choice-of-law provision to the issue presented in this Motion. (docket # 29 at 3; docket # 33 at 2)

**B. Arizona or California Law**

The Arizona Supreme Court has concluded that Arizona courts follow the Restatement (Second) of Conflict of Laws ("Restatement") to determine the applicable law in a contract action. *Swanson v. The Image Bank, Inc*., 206 Ariz. 264, 266, 77 P.3d 439, 441 (Ariz. 2003); *Cardon v. Cotton Lane Holdings, Inc*., 173 Ariz. 203, 207, 841 P.2d 198, 202 (Ariz. 1992). "If a contract includes a specific choice-of-law provision, [a court] must determine whether that choice is 'valid and effective' under Restatement § 187." *Swanson*, 77 P.3d at 441. "When more than one state has a relationship to or an interest in a contract, courts apply a conflicts analysis to determine which state's law should govern." *Id*. (citing *Cardon*, 173 Ariz. at 207, 841 P.2d at 202 and Restatement § 187). "However, neither a statute nor a rule of law permitting parties to choose the applicable law confers unfettered freedom to contract at will on this point." *Id*. Choice-of-law issues are questions of law. *Id*.

Double AA's Motion indicates California law "requires that all contractors hold and maintain a proper California contractor's license before performing any work on a construction project[,]" citing Cal. Bus. & Prof. Code §§ 7026, 7031.[1] (docket # 29 at 5)

---

[1] California Bus. & Prof. Code § 7031 states:

> Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly

- 6 -

In addition to possible criminal sanctions pursuant to § 7028, Double AA points out that in California a contractor may not sue to recover compensation for any work performed under an agreement for services requiring a contractor's license unless proper licensure was in place at all times during such contractual performance. *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc*., 36 Cal.4th 412, 428, 115 P.3d 41, 50 (Cal. 2005). ("Together these provisions make clear the general rule denying recovery of all compensation for work requiring a contractor's license if a valid license was not in place when performance began, or if licensure lapsed at any time during the work."). (*Id*. at 6)

Double AA cites numerous other California cases to support its argument that unlicensed contractors in California may not seek a judicial remedy for non-payment of work performed: *Great West Contractors, Inc. v. WSS Indus. Constr., Inc*., 162 Cal. App. 4th 581, 76 Cal. Rptr. 3d 8 (Cal. Ct. App. 2008); *Banis Restaurant Design, Inc. v. Serrano*, 134 Cal. App. 4th 1035, 36 Cal. Rptr. 3d 532 (Cal. Ct. App. 2005) (the strength and clarity of this public policy require that § 7031 applies despite injustice to the unlicensed contractor); *Hydrotech Systems, LTD v. Oasis Waterpark*, 52 Cal.3d 988, 803 P.2d 370, 376-377 (Cal. 1991) (unlicensed contractors may not pursue actions for fraud or bad faith regardless of any inequities that might result); *Brown v. Solano County Bus. Dev., Inc*. 92 Cal. App. 3d 192, 154 Cal. Rptr. 700 (Cal. Ct. App. 1979) (courts may not resort to equitable considerations in defiance of § 7031).

"The purpose of [California's] licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services." (citation omitted) *Hydrotech Systems,* 52 Cal.3d at 995. "The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of

---

licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.

- 7 -

1 administering a contracting business." *Id*.

2 Because it is irrelevant to this case, CMC does not dispute Double AA's summary of California law or the factual assertions that (1) "CMC did not obtain a 'Class C-8' [a California concrete specialty] license—or any other California contractor's license—until September 28, 2004[,]" which was after CMC's last day of work on the Project on August 20, 2004; and (2) "CMC did not perform any work on the Project while it held the appropriate contractor's license issued by the California Contractors State Licensing Board." (DSOF ¶¶ 2,3, 8, 9; docket # 30)

Conversely, CMC establishes "Plaintiff was in fact licensed in Arizona at the time the parties entered into the contract and at the time the cause of action arose." (Plaintiff's Supplemental Response ("PSR"), docket # 33 at 3; Exh. 2, Plaintiff's Arizona Registrar of Contractors Contractor's License ROC195973; docket # 33-2 at 5) CMC's Arizona commercial concrete license indicates CMC's license is current and was first issued on May 20, 2004. Both CMC's and Double AA's evidence establish CMC executed the Subcontract in Colorado on May 12, 2004, and Double AA Builders of California, Inc. signed it in Arizona on May 28, 2004. (PSOF, ¶ 2$^2$, docket # 31-3 at 2; DSOF, ¶ 1). Viewing the evidence as true in the light most favorable to the non-moving party, CMC was properly licensed in Arizona to perform commercial concrete work when Double AA signed the Subcontract on May 28, 2004.

Apparently more forgiving than California, a contractor in Arizona may not recover compensation for work performed unless that contractor substantially complied with Arizona's licensing statutes at all times during which it performed work requiring a

---

$^2$ PSOF, ¶ 2 actually indicates Double AA executed the contract in Arizona on "May 29, 2004." The Court concludes this is a typographical error as the Subcontract clearly reads that David G. Pena, Secretary/Treasurer for Double AA Builders of California, Inc., signed the Subcontract on May 28, 2004.

- 8 -

contractor's license. See, Arizona Revised Statute ("A.R.S") § 32-1153[3]; *Twin Peaks Constr. Inc. of Nev. v. Weatherguard Metal Constr., Inc.*, 214 Ariz. 476, 478, 154 P.3d 378, 380 (Az. Ct. App.2007) (cases cited); *Bentivegna v. Powers Steel & Wire Prods., Inc.*, 206 Ariz. 581, 587, 81 P.3d 1040, 1046 (Az. Ct. App. 2003) ("[T]he purpose of A.R.S. § 32-1153 is not to penalize contractors, but 'to protect the public from unscrupulous, unqualified, and financially irresponsible contractors.'. . To promote this purpose, the supreme court has allowed contractors to show that they have substantially complied with the licensing statutes before § 32-1153 is triggered.") (citing *Aesthetic Prop. Maint. v. Capitol Indemnity*, 183 Ariz. 74, 77, 900 P.2d 1210, 1213 (Ariz. 1995)). Clearly, by mandating contractors be properly licensed in each State during a construction project, the public policies of both California and Arizona's licencing requirements are to protect the public.

## **ANALYSIS**

The parties agree that Restatement § 187 outlines the test used to determine whether their chosen law will govern. They disagree, however, on § 187's application to the facts of this case.

Restatement § 187 provides a mechanism to balance the interests of both the parties to a contract and the states which may have a significant interest in that contract. *Swanson*, 77 P.3d at 441. *Swanson* counsels Arizona and federal courts to "perform a § 187 analysis to ascertain the appropriate balance between the parties' circumstances and the states' interests. By so doing, [courts] determine as a matter of law whether the provision is valid and thus whether it should govern the parties' contractual rights and duties." *Id.* at 442.

---

[3] A.R.S § 32-1153 provides:
> No contractor as defined in § 32-1101 shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

- 9 -

Restatement § 187 provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied *if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.*

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

\*   \*   \*   \*   \*

Restatement § 187 (emphasis added).

To properly answer the question presented, the Court must consider the facts in *Swanson* and the Arizona Supreme Court's application of those facts to its § 187 analysis.

In *Swanson*, a prospective Texas employer and Arizona employee, each represented by counsel, entered into an employment contract which contained provisions regarding compensation to be received upon termination and the application of Texas law as the law under which the contract should be governed and construed. Each party was represented by counsel during the contract negotiations. The trial court determined that the employer breached the employment contract with Swanson and awarded Swanson treble damages under Arizona law (A.R.S. § 23-355) notwithstanding the parties' express agreement that Texas law controlled the employment contract. *Id.* at 440. Finding that the Arizona statute sets forth a "fundamental public policy" of Arizona and, as such, should supersede the choice-of-law provision in the contract, the trial court trebled the damages under Arizona law. *Id.*

The Arizona Court of Appeals applied Restatement § 187(1) and (2) and affirmed the treble damage award on the theory that Arizona law does not expressly permit prospective contractual waiver of claims under § 23-355 in the case of unreasonable, bad-faith withholding of wages. The Texas choice-of-law provision was held to be invalid

- 10 -

1 by the Court of Appeals as a violation of Arizona's "fundamental policy" under both
2 subsections of Restatement § 187. *Id.* at 441.

3        The Arizona Supreme Court reversed, holding "the court of appeals erred by
4 collapsing the analysis of subsections (1) and (2)(b) of Restatement § 187 by engaging in a
5 discussion of state policy." *Id.* at 443.

> [B]ecause the disputed issue in the instant case is one that the parties were able to resolve pursuant to the express language of § 187(1), we need not address the question whether application of the law of Texas, the state chosen by the contracting parties, would violate a fundamental policy of Arizona. See *Stromberg*, 77 F.3d [928, 933 (7th Cir. 1996] (finding the court does not perform a § 187(2) analysis where § 187(1) applies); *Sheldon v. Munford, Inc.*, 660 F.Supp. 130, 135 (N.D.Ind. 1987) (same); *Armstrong Bus. Servs., Inc. v. H & R Block*, 96 S.W.3d 867, 872-73 (Mo. Ct. App. 2002) (same); see also *Cardon*, 173 Ariz. at 207, 209, 841 P.2d at 202, 204 (declining to apply a § 187(2)(a) analysis where § 187(1) applied).

*Id.*

12        *Swanson* instructs that "[i]n deciding whether the parties' choice [of law] will
13 govern, we first determine whether the disputed issue is one which the parties could have
14 resolved by an explicit provision in their agreement. Restatement § 187(1)." *Id.* at 442.
15 There, the Arizona Supreme Court found the particular § 187(1) threshold issue was whether
16 parties may contractually waive any statutory right or claim to treble damages under §
17 23-355, citing "Restatement § 187 cmt. c (the question whether the parties could have
18 resolved a particular issue by explicit agreement directed to that issue is a question to be
19 determined by the local law of the state selected by application of the rule set forth in
20 Restatement § 188)." *Id*.

21        The Court noted:

> [S]ection 187(1) places few limitations on parties' right to contract. Examples of issues that parties may not determine by explicit agreement include questions involving capacity, formalities, and validity. Restatement § 187 cmt. d. Thus, parties cannot vest themselves with capacity to contract by so stating in an agreement, nor can they dispense with the formal legal elements of a valid contract. *See id*. Generally speaking, however, parties do have the power to determine the terms of their contractual engagements. Restatement § 187 cmt. c. We find this to be particularly true in this case where parties of relatively equal bargaining power, both represented by counsel, selected the law of the state to govern their contract.

*Id*. at 443.

28        The Court disagrees with Double AA's formulation of the threshold § 187(1)

- 11 -

issue: whether the parties could use Arizona's choice-of-law provision to opt out of the statutory regulations and requirements of the California Contractors' State Licensing Law, including § 7031(a), for a construction project located in California. Although appealing in a vacuum, Double AA offers no authority to support its claim that Arizona and California forbid contractors from opting out of their state's licensing laws for construction projects located within their borders when that contractor is properly licensed in another state. (docket # 34 at 3) Likewise, CMA also misses the mark that the threshold § 187(1) issues herein are the Subcontract's "terms of payment and withholding of funds . . . which are the subject of Plaintiff's claims." (docket # 31 at 5)

The Court finds that the particular § 187(1) threshold issue in this case is whether the parties could have resolved the issue of subcontractor licensing, in general, or, specifically, whether a valid Arizona concrete license would be satisfactory for the California Project by an explicit provision in the Subcontract itself.[4] The Court concludes that the parties could have done so and, therefore, "[t]he law of the state [Arizona] chosen by the parties to govern their contractual rights and duties will be applied . . . ." Restatement § 187(1).

This Court has not been provided, nor has its independent research disclosed, any Arizona law which expressly prohibits the use of a valid Arizona construction license for a building project in California or any other state. Further, Double AA has not sufficiently demonstrated California law insists that its construction licensing statutes be applied to all work performed in that State, even by a validly licensed Arizona subcontractor. Like the parties in *Swanson*, the parties herein are experienced in their business of multi-state construction and had relatively equal bargaining strength when they negotiated the terms of their Subcontract. The parties certainly could have determined, by express provision in their Subcontract, which state's licensing law should apply to the Project. Had Double AA

---

[4] The Court disagrees with Double AA's initial premise that "the parties could not have resolved this particular issue in their contract," warranting proceeding to the next step in the analysis is set forth in Restatement Section 187(2). (docket # 34 at 3)

- 12 -

wanted CMC to be validly licensed in California for the Project's concrete work, it could have said so in the Subcontract.

*Swanson* and the federal cases upon which it relied, like the Seventh Circuit's decision in *Stromberg*, instruct that it is unnecessary to reach § 187(2) and address the fundamental policy of a state which may have a materially greater interest in the contract than the chosen state when the issue is one, like subcontractor licensing, which could have been addressed by the parties in their Subcontract. The Court declines Double AA's invitation that the Court commit the same reversible error made by the lower courts in *Swanson* by engaging in a flawed § 187 analysis "collapsing . . . subsections (1) and (2)(b) of Restatement § 187 [and] engaging in a discussion of state policy." *Id.* at 443. The Court will not read § 187(1) so narrowly.

Accordingly,

**IT IS ORDERED** that Defendants Double AA Builders of California, Inc. and Double AA Builders, LTD's Motion for Summary Judgment on Plaintiff's Affirmative Claims, docket # 29, is **DENIED**.

**IT IS FURTHER ORDERED** that Double AA's request for oral argument is **DENIED**.

DATED this 5th day of January, 2009.

Lawrence O. Anderson
United States Magistrate Judge